BEALES, Judge.
Benjamin H. Rice, Sr. and Kathleen W. Rice, paternal grandparents, appeal the denial of their petition for visitation with their granddaughter. The grandparents present the following issues: 1) they argue that the trial court erred in its “application of [Code] § 20-124.3:1 [by] not allowing the testimony of Wendy Hall, LCSW”; 2) they claim that the trial court abused its discretion “in not ordering visitation [by the grandparents with their grandchild] to be in the best interest of the child”; and 3) they argue that the trial court erred in its “application of the best interests [of the child] standard in denying appellants’ petition for visitation.” Cameille Cromer, mother, cross-appeals the trial court’s use of “the best interests of the child standard rather than the actual harm to the child test.” Each party asks this Court for attorneys’ fees associated with the appeal. For the following reasons, we affirm the trial court’s ruling and, consequently, decline to rule on mother’s cross-appeal issue. We deny each party’s request for attorneys’ fees.
I.
BACKGROUND
The child is the daughter of V. Cameille Cromer and Benjamin H. Rice, Jr. Mother and father had been previously granted a final divorce. A portion of the divorce proceedings involved the cessation of father’s visitation and overall contact with the child due to allegations of sexual abuse of the child by *195 her father. In an administrative hearing, father was found to have committed a level 1 sexual abuse act against the child in the grandparents’ home. That finding was subsequently affirmed in two administrative appeals, and the matter was pending in circuit court when this appeal was filed.
On February 9, 2004, grandparents filed a petition for visitation with the child. They were granted supervised visitation by a Consent Order on October 29, 2004. Thereafter, the juvenile court granted the grandparents visitation every other weekend for a period of eight hours. Mother appealed the decision to the Prince George Circuit Court, which held a de novo visitation hearing on October 25, 2005.
As a preliminary matter, the trial court heard argument on whether or not to grant mother’s motion in limine, which moved to exclude the testimony of the child’s former therapist, Wendy Hall. Mother argued that Code § 20-124.3:1 barred testimony by a therapist on behalf of or against a parent without written consent of the parent, which neither mother nor father here had given. The guardian ad litem argued against granting the motion in limine, proffering that Hall’s testimony would consist of “impressions about [the] child and statements that may have been made by the parent.” The trial court sustained the motion, noting that Hall was brought in to testify by and for a party to the suit (grandparents) and thus could “not testify on behalf or against a parent or any of the parent’s adult relatives, if she is called as a mental health provider.” The trial court also restricted the testimony of another therapist, Cara Campanella, who was called to testify by the mother.
Next, the parties presented argument on which legal standard the trial court should employ in its analysis of the visitation petition: the best interests of the child standard found in Code § 20-124.3 or the actual harm standard articulated in Williams v. Williams, 256 Va. 19, 501 S.E.2d 417 (1998), and Griffin v. Griffin, 41 Va.App. 77, 581 S.E.2d 899 (2003). The trial court held the best interests of the child standard applied under the facts of this case.
*196 Testimony from paternal grandmother, from mother, and from experts dealt with the child’s tendency to twitch and “self-masturbate,” which was also termed “self-stimulating behavior.” This behavior intensified and resulted in distraction at school and the inability to complete homework.
Mother explained that the level of masturbation would “get[ ] better” in the period between the visits with grandparents, “but usually the Sunday or Monday afterwards, she becomes completely dysfunctional again____You can’t even ... get her to sit still and do her homework.” The child stopped the behavior completely during a four-week period when the grandparents were out of town, but, according to mother, she immediately resumed the behavior when the visitation resumed. Grandmother stated that she initially noticed the behavior in spring 2003, but she did not advise mother of it.
Dr. Leigh Hagan, an expert in forensic psychology, observed and tested the child, noting that the psychological testing used “measures that are well-recognized, they’re accepted in the field and they have been subject to peer review.” Hagan opined that the child “is a psychologically healthy child, with the exception being the encapsulated area of family pathology, family maladjustment, which ... derives from the original trauma which gave rise to the founded complaint.” Hagan further stated that, as a result of the father’s alleged abuse, certain stimuli associated with the grandparents’ visits caused the child to resume the self-stimulating behavior, and “the stimuli ... associated with that original trauma will more likely than not be reawakened for her if there is Court-ordered visitation.” Hagan concluded that any loss or separation the child might feel from not visiting the grandparents would be counter-balanced by “protection or insulation from situations that are the same or similar to that resembling those factors surrounding the original trauma.”
Don Wilhelm, a clinical social worker, had been previously ordered by the court to perform an assessment on the child and was accordingly admitted “as an expert in the area of *197 attachment.” The assessment was performed at Wilhelm’s home, with the child and both maternal and paternal grandparents present. Wilhelm did not observe “any excessive anxiety [n]or [did] the child attempt[ ] to present a false sense of self,” leading him to conclude that no “red flags” were present.
Willie Cromer, Jr., the maternal grandfather, recounted that the child’s meeting with Mr. Wilhelm “was supposed to be an hour.” He explained that Wilhelm only spent between twenty to twenty-five minutes with the child, that Wilhelm twice excused himself to eat during the session, and that Wilhelm spent ten minutes in the front yard conversing with his wife while waiting for a child to arrive on the school bus. He estimated the entire session lasted less than one hour.
The parties stipulated that the father supports the grandparents’ petition for visitation.
The trial court denied grandparents’ petition, noting its decision was based on the statutory best interest “factors and all the evidence and all the comments.” In support of its ruling, the trial court made extensive findings, including the following:
In this case, we have one parent, who definitely says I don’t want to be ordered to let my child visit the grandparents, I fully intend for them to have a relationship with the paternal grandparents, but I want to be able to do it when I think it is appropriate and proper, as opposed to the grandparents who say the child gets along well with us, there is no problem when the child is with us, and I have no question about that. I feel certain the child does get along well. I am very impressed with the grandmother, she makes a very good witness, she is very brief in her answers and very straight and direct, she comes right to the point, and I think in probably dealing with problems, child rearing problems, she is very competent and capable of responding appropriately, as one of the witnesses pointed out, to problems of dealing with child’s behavior.
*198 But does that mean that they should be allowed to demand from the mother, who is the custodian of this child at this time, the sole custodian, I mean insofar as the father has no visitation or contact, should they be allowed to demand that the mother, over her objection and against her best judgment, to have this child come and visit them. That’s what is before me.
The trial judge also found “some evidence that, after th[e] visitation, there is some exacerbation in the child’s problem behavior,” which was an increased level of masturbation. Therefore, and noting the fact that “this child is suffering at this time and has problems and difficulties,” the court held that “the mother has the right to make the decision about how things are handled with this child.” Also, the judge stated that he “thought Dr. Hagan’s testimony was helpful ... very well spoken and a man with impressive credentials,” but continued, “I was not impressed with Mr. Wilhelm ... not so much with the description that Reverend Cromer ... gave, but with Mr. Wilhelm’s own testimony, he seemed not to know a lot, which are things we would like for him to be able to give answers to.”
The trial judge also held that he was not denying all contact between the grandparents and the child. The judge specifically stated that he would enter an order, if necessary, which would allow cards, letters, and phone calls between the child and her grandparents. Mother was also required to give information and notice to the grandparents so that they could attend the child’s “events, soccer games, school plays or whatever might come about.”
II.
ANALYSIS
A.
Grandparents assert the trial court erred in interpreting Code § 20-124.3:1 and in not allowing therapist Wendy Hall to testify. On brief, they “contend that impressions of *199 how therapy has gone, completion of goals, treatment, over-all mental health, emotional needs or observations of the child are not barred ... because statements of that nature may not necessarily enure to the benefit or detriment of either parent or his or her relatives.”
Code § 20-124.3:l(B) states in pertinent part:
In any case in which custody or visitation of a minor child is at issue pursuant to § 20-124.2, whether in a circuit or district court, a mental health care provider licensed in the Commonwealth may not be required to testify on behalf of or against a parent or any of the parent’s adult relatives, and may do so only with the advance written consent of the parent.
In Schwartz v. Schwartz, 46 Va.App. 145, 616 S.E.2d 59 (2005), where the therapist was “a mental health care provider for the children,” id. at 149, 616 S.E.2d at 61, we interpreted the language and legislative history of Code § 20-124.3:1. There, we held:
The language in Code § 20-124.3:1 is plain____Subsection (B) provides that the mental health care provider “may not be required to testify on behalf of or against a parent or any of the parent’s adult relatives” without “the advance written consent of the parent. ” ... In addition, Code § 20-124.3:1 provides no exception permitting the trial court to order disclosure for the broad purpose of determining the best interests of the child.
Id. at 156-58, 616 S.E.2d at 65-66 (quoting Code § 20-124.3:1) (emphasis in original). We also noted that “[n]othing in the language of Code § 20-124.3:1 as enacted requires that the parent must have been a patient in order to invoke the privilege.” Id. at 156, 616 S.E.2d at 65 (emphasis added).
While we recognize that the mother in Schwartz desired to specifically exclude “testimony about her[self],” we hold that the rationale of that case and this Court’s interpretation of the plain language in Code § 20-124.3:1 still apply to this matter. In this case, the mental health therapist (Hall), who was hired by the mother and called to testify by the grandparents, is *200 necessarily testifying “on behalf of or against” one or both of the parents or an adult relative of either parent (i.e., the grandparents), since they are all parties to this dispute. Moreover, a portion of the guardian ad litem’s proffer—that the therapist would testify as to “impressions about [the] child and statements that may have been made by the parent”— suggests that some of Hall’s testimony would, in fact, directly relate to a parent.[1]
Here, the trial court did not err in its interpretation of the statute and its subsequent ruling on the motion in limine. In fact, the trial judge, in articulating his decision, quoted verbatim the language of the statute that compels his holding. The trial court noted that grandparents offered Hall’s testimony, and that fact made it likely that the substance of the testimony would be adverse to mother’s position in the case. Thus, we hold the trial court did not err in restricting Hall’s testimony; both our decision in Schwartz and the plain meaning of Code § 20-124.3:1 compel this result.[2]
B.
Questions 2 and 3, as phrased by appellants, are: 2) did the trial court abuse its discretion “in not ordering visitation [by the grandparents with their grandchild] to be in the best interest of the child”; and 3) did the trial court err in its “application of the best interests [of the child] standard in denying appellants’ petition for visitation.” Both questions *201 present substantially the same issue. Thus, we address the two together, noting specific arguments that appellants make within each.
i.
For purposes of this section, we assume without deciding that the trial court applied the proper legal standard, the best interests of the child. Code § 20-124.3 lists ten factors that a trial court “shall consider” when “determining best interests of a child for purposes of determining custody or visitation arrangements.” “Although the trial court must examine all factors set out in Code § 20-124.3, ‘it is not required to quantify or elaborate exactly what weight or consideration it has given to each of the statutory factors.’ ” Brown v. Brown, 30 Va.App. 532, 538, 518 S.E.2d 336, 338 (1999) (quoting Sargent v. Sargent, 20 Va.App. 694, 702, 460 S.E.2d 596, 599 (1995)) (additional citation omitted). “As long as evidence in the record supports the trial court’s ruling and the trial court has not abused its discretion, its ruling must be affirmed on appeal.” Id.
“Where, as here, a court hears evidence ore tenus, its findings are entitled to the weight of a jury verdict, and they will not be disturbed on appeal unless plainly wrong or •without evidence to support them.” Gray v. Gray, 228 Va. 696, 699, 324 S.E.2d 677, 678 (1985). See also Denise v. Tencer, 46 Va.App. 372, 397, 617 S.E.2d 413, 426 (2005). Moreover, it is well established that “[o]n appeal, we view the evidence in the light most favorable to the prevailing party, granting that party the benefit of any reasonable inferences.” Id.
In reaching a decision in this matter, the trial court specifically discussed his evaluation of the experts’ testimony. For example, the judge found Dr. Hagan “helpful,” while noting that Mr. Wilhelm “seemed not to know a lot.” Such an evaluation rests solely with the trial judge, as “the credibility of witnesses and the weight to be accorded their testimony is a matter exclusively within the province of the trier of fact.” *202 Yopp v. Hodges, 43 Va.App. 427, 439, 598 S.E.2d 760, 766 (2004).
Here, the trial court properly considered the Code § 20-124.3 factors and the evidence presented in the case. Taken in the light most favorable to mother (the party who prevailed in the trial court), and as the trial court found, there exists “some evidence that, after ... visitation, there is some exacerbation in the child’s problem behavior.”[3] Consequently, the trial court determined that giving “the mother ... the right to make the decision about how things are handled with this child” was in the best interests of the child because “everybody, including the guardian [ad litem], says the child is suffering at this time and has problems and difficulties.”
We cannot say this ruling by the trial court was plainly wrong or without evidentiary support. Accordingly, and given our standard of review on this issue, we hold that the trial court did not abuse its discretion, and we, therefore, affirm its denial of appellants’ petition for visitation.
n.
On brief, grandparents also argue that the trial court “place[d] too much weight, in consideration of Dr. Hagan’s opinions and findings” and moreover, that Hagan’s “testimony should have been excluded.”
After a lengthy discussion on brief about the admissibility of expert testimony, appellants clarify that argument as follows: “Dr. Hagan’s testimony should have been excluded by the court because his opinions were founded on assumptions that *203 have an insufficient factual basis and because he failed to consider all the variables that could influence his opinion.” In addressing that claim, we again note “ ‘that the trier of fact ascertains [an expert] witness’ credibility, determines the weight to be given to their testimony, and has the discretion to accept or reject any of the witness’ testimony.’ ” Piatt v. Piatt, 27 Va.App. 426, 435, 499 S.E.2d 567, 571 (1998) (quoting Street v. Street, 25 Va.App. 380, 387, 488 S.E.2d 665, 668 (1997) (en banc) (additional citation omitted)). Thus, to the extent that appellants argue the trial court improperly weighed Dr. Hagan’s testimony, we hold that the trial court did not abuse its discretion in that regard.
C.
Mother maintains on cross-appeal that the trial court erred by applying the best interests of the child standard rather than the actual harm standard articulated in Williams and Griffin. However, our holding above renders a decision on that issue unnecessary because the trial court denied appellants’ petition under the more lenient of the two standards. Thus, even if this Court were to determine the trial court erred by not first finding actual harm, the result in this case would not be different.
Mother, nonetheless, asks this Court to address the issue and hold any error, if found, harmless. We decline the invitation to do so, in accordance with this Court’s longstanding reluctance to issue an advisory opinion. See Logan v. Commonwealth, 47 Va.App. 168, 171 n. 3, 622 S.E.2d 771, 773 n. 3 (2005) (en banc) (noting “our reluctance to issue what amounts to an ‘advisory opinion’ on an inessential subject” (quoting Craddock v. Commonwealth, 40 Va.App. 539, 551 n. 1, 580 S.E.2d 454, 461 n. 1 (2003))).
III.
ATTORNEYS’ FEES
Both parties request an award of attorneys’ fees. As we held in O’Loughlin v. O’Loughlin, 23 Va.App. 690, 695, 479 S.E.2d 98, 100 (1996):
*204 The rationale for the appellate court being the proper forum to determine the propriety of an award of attorney’s fees for efforts expended on appeal is clear. The appellate court has the opportunity to view the record in its entirety and determine whether the appeal is frivolous or whether other reasons exist for requiring additional payment.
Here, we find no reason to award either party attorneys’ fees under this standard and accordingly deny each party’s request for the same.
IV.
CONCLUSION
For the foregoing reasons, the judgment of the trial court is affirmed. Each party remains responsible for its attorneys’ fees.

Affirmed.

. In his response to the motion in limine, the guardian ad litem argues, “Ms. Hall’s opinions, impressions, statements regarding sessions and information relating to discussions with the respondent, Ms. Cromer, address the subject matter that is before the Court....” This representation leads us to conclude that at least part of Hall’s testimony would recount conversations that the mother had wished to remain confidential.

. Code § 20-124.3:l(B) also provides that "the court may order a licensed mental health care provider to testify on matters specifically related and limited to suspicion of an abused or neglected child as defined in § 63.2-100 of the Code of Virginia.” Neither party argued, at trial or on appeal, that this provision of the statute applies to the facts of this case.

. We note that the record certainly does not establish that the grandparents were the cause of the child’s masturbation. Indeed, the trial judge favorably commented upon the grandparents’ child-rearing abilities and noted that the grandparents have cooperated in the mother’s efforts to seek counseling for the child.
We further note that the trial judge’s decision in this case was made in the light of a finding in an administrative proceeding that the father, who had lived in the grandparents’ residence, had sexually abused the child. That finding is the subject of an appeal to this Court in a separate proceeding.