COURT OF APPEALS OF VIRGINIA


Present:   Judges Elder, Haley and Senior Judge Annunziata
Argued at Alexandria, Virginia


EARL S. GARRETT
                                                    MEMORANDUM OPINION[*] BY
v.        Record No. 1007-06-4              JUDGE JAMES W. HALEY, JR.
                                                    AUGUST 28, 2007
WARREN COUNTY DEPARTMENT OF
  SOCIAL SERVICES


                    FROM THE CIRCUIT COURT OF WARREN COUNTY
                               John E. Wetsel, Jr., Judge

            Leo J. Scolforo (Melissa W. Scoggins, on briefs), for appellant.

            Neal T. Knudsen for appellee.

            (Thomas H. Sayre, on brief), Guardian *ad litem* for the minor
            children.  Guardian *ad litem* submitting on brief.


        Earl S. Garrett (appellant) appeals the trial court's decision denying him custody of his

two granddaughters.  Appellant argues:  (1) the trial court erred in applying the factors of Code

§§ 20-124.2 and 20-124.3, and in failing to exclusively apply Code § 16.1-283(A1), in its

custody determination; and, (2) the trial court made erroneous factual findings.  We affirm.

                                            FACTS

        Appellant is the maternal grandfather of two girls, one born November 8, 1999, and one

born May 23, 2001, to Elizabeth and Steve Tennett.  The girls and their parents lived primarily

with appellant in his home between February and July 2003.  During this period, though, the

girls would "run back and forth" between living with appellant and living with his mother, the

girls' great-grandmother, who lived next door.

_____
        [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

During an investigative visit by the Warren County Department of Social Services (DSS) on May 23, 2003, the DSS representative found appellant's house was in "disarray": the girls' bedroom was covered with dirty clothes and contained roaches and spoiled food; the ceiling of a bathroom was "falling in"; and both bathtubs were "filthy." Both girls had head lice. One of the girls suffers from multiple disabilities involving speech, attention span, and anger management, as well as severe allergies and asthma.

DSS told the parents they would take steps to remove the girls involuntarily. The parents voluntarily agreed to relinquish custody temporarily to a maternal great aunt, Bernadette Ishmael (Bernadette). The girls began living with Bernadette in early August 2003, and that temporary custodial arrangement was confirmed by a September 12, 2003 order of the Warren County Juvenile and Domestic Relations District Court (JDR court). Several months later, however, Bernadette advised DSS she could no longer care for the girls, then aged two and three, because of a medical condition.

On January 12, 2004, the JDR court found the girls to be neglected children, based on the care they received prior to removal from appellant's home and, on February 27, 2004, custody was granted to DSS. On April 28, 2004, the girls were placed in foster care, where they presently remain. In April 2005, appellant petitioned the JDR court for custody of the girls.

As a result, on August 23, 2005, DSS again visited appellant's residence and issued a report. After addressing several concerns, including whether appellant's work schedule permitted him to raise two young girls and whether he "has a good understanding of how to raise children with developmental delays," the report continued:

> [Appellant] informed this worker that if the children were placed with him, he would like to see them reunited with their brothers, sisters and family. When asked if he would allow them to have contact with their biological parents, he stated that he would give custody back to them if he thought they could take care of the girls.

By orders dated December 21, 2005, the JDR court terminated the parental rights of the girls' parents, Elizabeth and Steve Tennett, denied appellant's petition for custody, and approved a permanency plan of adoption. Neither parent appealed the termination order. Appellant, however, appealed the custody denial.

The appeal was heard on March 15, 2006. The record shows that, since the girls were removed from his home in 2003, appellant has had no contact other than seeing them once, in September 2003, and speaking to them once, on November 8, 2003. Indeed, appellant testified, "I don't know about [the younger girl]. Like I say, she was only [two] years old when she was took away. She's not going to remember me."

Appellant is a long distance truck driver who works approximately 15 days each month. He leaves the house as early as 4:00 a.m., returning between 6:00 p.m. and 7:00 p.m. On cross-examination, appellant was questioned about his relationship with his daughter, the mother of the girls:

> Q. Okay. Do you see [their mother] a lot these days?
> A. She's at my house every day.
> Q. If you get custody of these girls, then they'll see [their mother] a lot?
> A. Yes.
>
>      *    *    *    *    *    *    *
>
> Q. Okay. So, if you get custody, the two girls can be in some way reunited with their parents, right?
> A. Yes.
>
>      *    *    *    *    *    *    *
>
> You know, they're brothers and sisters. You know, they belong together. I'd like to see them all together.

Elizabeth Tennett, also the mother of three other children, testified that she brings those three to appellant's home and spends time there. She "would hope," if her father were granted custody, she could "be reunited" with the girls.

The girls had been with the same foster family for twenty months, since 2004. The foster mother, a licensed nurse, and her husband, a director of human resources, wish to adopt the girls. The girls refer to them as their mother and father and to their foster siblings as their "brothers." The child with multiple disabilities has substantially improved, as have her allergies and asthma. The girls share a bedroom with twin beds and are doing well in school.

By order of March 20, 2006, the trial court denied appellant's custody petition and vested custody in DSS to proceed with adoption. The order incorporated a six-page written opinion. The trial court noted that Code § 16.1-283(A) requires consideration of appellant as a grandparent as a "factor" within those set forth in Code §§ 20-124.2 and 20-124.3, "which apply to all custody decisions, including this one . . . ." The trial court concluded "by clear and convincing" evidence that, within the context of the termination proceeding, transfer to the grandfather was not in the best interest of the children and that their best interest was served by granting custody to DSS with the goal of adoption. In compliance with Code § 20-124.3, the trial court addressed each of the ten custodial factors set out therein and "communicate[d] to the parties the basis of the decision . . . in writing."

STANDARD OF REVIEW

On appeal, we consider the evidence in the light most favorable to the prevailing party below. Martin v. Pittsylvania County Dep't of Soc. Servs., 3 Va. App. 15, 20, 348 S.E.2d 13, 16 (1986). When, as here, the trial court's ruling was based on evidence heard *ore tenus*, the decision will be upheld on appeal unless plainly wrong or without evidence to support it. Peple v. Peple, 5 Va. App. 414, 422, 364 S.E.2d 232, 237 (1988); see also Rice v. Rice, 49 Va. App. 192, 201, 638 S.E.2d 702, 707 (2006). The trial court's conclusions as to questions of law, however, are subject to *de novo* review. Rusty's Welding Serv. v. Gibson, 29 Va. App. 119, 127, 510 S.E.2d 255, 259 (1999).

"When addressing matters concerning a child . . . the paramount consideration of a trial court is the child's best interests." Logan v. Fairfax County Dep't of Human Dev., 13 Va. App. 123, 128, 409 S.E.2d 460, 463 (1991). Trial courts are given broad discretion to make the decisions necessary to guard and foster the best interests of the child. See id. "As long as evidence in the record supports the trial court's ruling and the trial court has not abused its discretion, its ruling must be affirmed on appeal." Brown v. Brown, 30 Va. App. 532, 538, 518 S.E.2d 336, 338 (1999).

CUSTODY DETERMINATION

Appellant first argues that the trial court erred in applying the factors of Code §§ 20-124.2 and 20-124.3, and failing to apply the factors of Code § 16.1-283(A1), when evaluating his custody appeal.

Code § 20-124.2 expressly governs "any case in which custody or visitation of minor children is at issue." The statute states that the trial court "shall give due regard to the primacy of the parent-child relationship but may upon a showing by clear and convincing evidence that the best interest of the child would be served thereby award custody or visitation to any other person with a legitimate interest." Code § 20-124.2(B). Code § 20-124.3 sets forth ten factors, each of which a trial court "shall consider" in "determining the best interests of a child for purposes of determining custody or visitation." Those factors include "[t]he needs of the child, giving due consideration to other important relationships of the child, including . . . extended family members," as well as "[a]ny history of family abuse." This "best interest" standard of Code § 20-124.3 sets forth "the overarching standard to be applied in any case involving a custody determination." Lynchburg Div. of Soc. Servs. v. Cook, ___ Va. App. ___, ___, ___ S.E.2d ___, ___ (August 14, 2007) (en banc) (Elder, J., concurring); see id. at ___, ___ S.E.2d at ___ (majority op.). As we explained in Brown, "Although the trial court must examine all

- 5 -

factors set out in Code § 20-124.3, 'it is not required to quantify or elaborate exactly what weight or consideration it has given to each of the statutory factors.'" 30 Va. App. at 538, 518 S.E.2d at 338 (quoting Sargent v. Sargent, 20 Va. App. 694, 702, 460 S.E.2d 596, 599 (1995)).

By contrast, Code § 16.1-283 sets forth factors to be considered in a proceeding to terminate residual parental rights and mandates only that the trial court give "*consideration* to granting custody to relatives of the child, including grandparents." Code § 16.1-283(A) (emphasis added); see also Hawthorne v. Smyth County Dep't of Soc. Servs., 33 Va. App. 130, 139, 531 S.E.2d 639, 644 (2000). Although Code § 16.1-283(A1) sets forth four specific findings that must be made in support of "[a]ny order *transferring custody of the child to a relative*,"[1] (emphasis added), because the trial court in the instant case did not transfer custody to appellant, the trial court was not required to determine whether the evidence would support such findings with regard to appellant.

On December 21, 2005, the JDR court entered two orders. See Hawthorne, 33 Va. App. at 139, 531 S.E.2d at 644. The first terminated the parental rights of the girls' parents, Elizabeth and Steve Tennett. In the termination proceeding, the JDR court considered granting custody to appellant, thereby meeting the standard set forth in Code § 16.1-283(A). Absent clear evidence to the contrary, a court is "presumed to have thoroughly weighed all the evidence, considered the statutory requirements, and made its determination based on the child's best interest." Farley v. Farley, 9 Va. App. 326, 329, 387 S.E.2d 794, 796 (1990). Significantly, the termination order

---

[1] In order to transfer custody to a "relative or other interested individual" pursuant to Code § 16.1-283(A1), the court must find that individual

> (i) is . . . willing and qualified to receive and care for the child;
> (ii) is willing to have a positive, continuous relationship with the
> child; (iii) is committed to providing a permanent, suitable home
> for the child; and (iv) is willing and has the ability to protect the
> child from abuse and neglect . . . .

was not appealed to the circuit court.[2] The second order entered by the JDR court granted custody of the girls to DSS with the goal of adoption and, by so doing, denied appellant's petition for custody of the girls. This order alone was appealed. Therefore, the sole issue before the trial court was whether custody should have been granted to appellant.

The trial court held a *de novo* hearing on the issue of custody. After reviewing the evidence, the trial court issued a comprehensive order detailing the justification for its decision denying custody to appellant. In that order, dated March 20, 2006, the trial court acknowledged that Code §§ 20-124.2 and 20-124.3 govern custody determinations and required the trial court to consider the ten factors enumerated there. The trial court itemized those factors and wrote a distinct and separate analysis for each of them. After analyzing the evidence against each factor of Code § 20-124.3, the trial court concluded that it was in the girls' best interest to deny appellant's custody petition.

We hold that: (1) the trial court gave consideration to placing custody of the girls with appellant; (2) the trial court applied the proper standards of Code §§ 20-124.2 and 20-124.3 in reaching its decision as to custody; and (3) the grant of custody of the girls to DSS with the goal of adoption and the concomitant decision to deny custody to appellant are supported by the evidence.

FACTUAL FINDINGS

"Under well-established case law, we will not reverse findings of fact made by a trial court unless they are plainly wrong or without evidence to support them." Galloway Corp. v. Wise, 244 Va. 344, 346, 421 S.E.2d 431, 433 (1992). "As long as evidence in the record

---

[2] Counsel for appellant confirmed this fact in his statement to the trial court: "[T]he termination of parental rights was ordered, and that's not been appealed. What was appealed was the refusal of his right to have custody of the children as a relative . . . ."

supports the trial court's ruling and the trial court has not abused its discretion, its ruling must be affirmed on appeal." Brown, 30 Va. App. at 538, 518 S.E.2d at 338.

Appellant maintains five specific findings contained in the trial court's written opinion are unsupported by the evidence. We address them *seriatim*.

(1) Appellant argues that the trial court erred in finding "as a result of an investigation by [DSS], on August 5, 2003, the two girls began living with their maternal aunt, [Bernadette]." Appellant points out that, during the hearing, his counsel stated that the girls' mother voluntarily placed the children with Bernadette. That statement was corroborated by Bernadette's testimony.

Although the parents voluntarily placed the girls in Bernadette's home, this voluntary placement happened "as a result of an investigation" by DSS. On direct examination, Bernadette testified as follows:

> Q. What were the circumstances which resulted in their living with you?
> A. I had called Nell Fordorko (ph) with DSS. I had gotten her name from my mother because Elizabeth had told her that [DSS] had become involved. And so I called her and told her that, you know, I was aware that [DSS] was involved and that we were concerned about the girls and that, you know, we had information that they were living in a tent and that we were concerned. And that if [DSS] was going to take the children away, we would prefer to have them ourselves as opposed to them going into foster care.

Therefore, Bernadette's testimony supports the trial court's conclusion that the girls began living with their aunt "as a result of an investigation" by DSS.

(2) Appellant next argues the trial court incorrectly found that he was never the primary caretaker of any children and that he had acquiesced in improper living conditions when the girls were living at his home. First, appellant misstates the trial court's ruling on the issue of whether he was a primary caretaker. The trial court's ruling did *not* state that appellant was never the primary caretaker of *any* children, but stated that appellant "has never himself been the primary

- 8 -

caretaker of his grandchildren." This ruling is based on evidence in the record that demonstrated that, although the girls at times lived at appellant's home, he was never their primary caretaker. Specifically, on cross-examination, appellant testified, "So, like I say, I wasn't the parent. You know, when they asked me I would try to help and stuff like that. You know, I didn't have control of the kids at the time because they had parents."

Regarding appellant's argument that the trial court incorrectly found appellant "acquiesced" in improper living conditions, we do not find appellant's argument persuasive. In an unannounced visit to appellant's home on May 23, 2003, a DSS agent found the house to be "in disarray." Spoiled food, roaches, and "filthy" conditions contributed to the improper living situation there. The trial court's statement that appellant "acquiesced to" the improper living conditions appears to properly characterize appellant's attitude toward the condition of his home. While it may be true that appellant encouraged the girls' mother to treat their head lice and that he disapproved of her failure to keep the house clean, appellant's home was nonetheless filthy and unfit for the girls to live in.

(3) Appellant claims that the trial court erroneously found that the children "have bonded with the foster family who propose to adopt them." However, testimony from Debra Brown, the girls' foster mother, supports the trial court's finding. Specifically, the foster mother stated that at the time of the hearing the girls had lived in her home for twenty months and they are "very happy." The girls call her "Mom or Mommy," they call their foster father "Dad or Daddy," and they refer to their foster siblings as their "brothers." The older girl, who had a history of asthma and learning and speech disabilities, has shown noticeable improvement in foster care. Accordingly, the trial court's ruling that the girls "have bonded with the foster family who proposes to adopt them" was not "plainly wrong or without evidence" to support it. Galloway Corp., 244 Va. at 346, 421 S.E.2d at 433.

(4) Appellant argues the trial court erred in finding that the condition of his house was a factor in the initial intervention by DSS in 2003. However, although the record suggests that the condition of appellant's home was not a factor in the initial *home visit* that occurred on May 23, 2003, the condition of appellant's home was a factor in the initial *intervention* by DSS. A DSS agent had found appellant's home to be "in disarray." The girls' mother testified that DSS did not consider appellant's home to be fit for the girls to live in, a statement that was corroborated by appellant's own testimony.[3] Within a few weeks of that initial home visit, custody of the girls was transferred to Bernadette, due to the condition of appellant's home. Therefore, the trial court did not err in finding that the condition of appellant's home was a factor in the initial intervention by DSS in 2003.

(5) Appellant states that the trial court incorrectly found the foster parents were better able to provide for the children's needs and to actively parent them. We have detailed above the relationship of the girls with the foster parents and their current, much improved, circumstances. The trial court's findings were not plainly wrong.

For the above stated reasons, we affirm the decision of the trial court.

Affirmed.

---

[3] On cross-examination of appellant, the following exchange occurred: "Q: Did [DSS] tell you that your house was not acceptable for the children to live? A: When she came in at the time, yes."