# CIRCUIT COURT OF WISE COUNTY

Vicky Lynn Welch
and Jennifer Brianna Mays

v.

Wise County
Department of
Social Services

January 27, 2012

Case No. CJ12-05

By Judge Chadwick S. Dotson

This matter came before the Court on January 27, 2012, for trial de novo on an appeal from the Juvenile & Domestic Relations District Court. Vicky Lynn Welch and Jennifer Brianna Mays have petitioned the Court for a determination of the legal and physical custody of a minor child, Adrianna Jo Keith, who is in the legal custody of the Wise County Department of Social Services (DSS). The Court has considered arguments of counsel and all relevant and material evidence presented and now rules as follows.

## I. *Findings of Fact*

Adrianna Jo Keith was born on November 16, 2009, and placed in the custody of Respondents due to a variety of factors, but most importantly, the serious and permanent mental health issues of the mother. The following day, Respondent performed an emergency home study at the residence of the Petitioners, and on November 18, 2009, the child was placed with Petitioner Welch pursuant to a properly executed Foster Care Agreement.

Less than two weeks later, Petitioners traveled with Adrianna to the University of Virginia Medical Center, where Adrianna was diagnosed with Phenylketonuria (PKU), a rare genetic disorder. Treatment for PKU

requires strict monitoring of the child's diet; a failure to treat the condition can result in brain damage.

By all accounts, Adrianna was well cared-for by both Petitioners. Petitioners strictly monitored the child's diet, worked diligently with DSS to obtain and administer a special formula, and traveled regularly to Charlottesville, Virginia, for Adrianna's medical appointments.

Although Welch was the Foster Parent under the agreement executed with Respondents, having been approved as a Foster Care Parent in October 2009, Mays had been an approved Foster Care Household Member since the child's placement in the home on November 18, 2009. In essence, Petitioners acted as co-parents in a household that also included Mays' natural son. It was a loving family environment for the child and, at that time, all parties seemed to agree that Petitioners were providing a good home for Adrianna and that adoption was a likely possibility.

Over the next twelve months, two petitions for custody of the child were filed and subsequently denied by the District Court. (One petition, from March 2010, was filed by the maternal grandmother; the other was filed by Amanda Stanley, a cousin of the birth mother, in August 2010.)

On April 12, 2011, Respondent executed a service plan, calling for termination of parental rights with a goal of eventual adoption by Welch. In fact, the natural father had already executed an Entrustment Agreement (on February 14, 2011), wherein he permanently terminated his parental rights to the child. The natural mother has since executed a similar Entrustment Agreement (on July 15, 2011). The natural mother's Entrustment Agreement contained a clause that purported to condition the agreement upon an eventual adoption by Amanda Stanley. Such a condition is invalid on its face. It is undisputed that the mother suffers from serious and permanent mental health impairments and that she will be incapable of properly caring for the child in the future.

Things proceeded well until May 12, 2011, when the Big Stone Gap Police Department received a complaint against Ms. Welch. Four days later, after investigation, charges were filed against Welch, alleging violations of Virginia Code § 18.2-57 (assault and battery) and § 18.2-371 (contribute to the delinquency of a minor).

The charges stemmed from an incident involving Ms. Welch's use of corporal punishment on Petitioner Mays' natural son, Gaylen, who was eight years old at the time. After a series of behavioral problems with Gaylen, Welch, by her own admission, "whipped him harder than [she] should have" with a belt. A neighbor overheard the commotion; Welch had taken Gaylen outside onto the back porch, so as to be away from Adrianna, who was sleeping, and the neighbor called the police. The police officer who took the charges noted that Welch was "very cooperative" with the investigation, and demonstrated "regret" over what had happened, but the officer proceeded to take out warrants on May 16.

That same day, Respondent initiated an investigation, and Adrianna was removed from the residence. That investigation ultimately yielded a Founded Complaint by the Department of Social Services.

The criminal charges were heard in Juvenile and Domestic Relations District Court, where Welch was found guilty. That finding was appealed to the Circuit Court. At the trial of this custody matter, Petitioners claimed that the Court had taken the case under advisement (presumably pursuant to the statutory authority in § 18.2-57.3), and that the case would be dismissed if Welch complied with certain conditions. However, no order was entered to that effect, and, in fact, there is nothing in the Court's record that indicates that the case was taken under advisement. The case remains pending on the Court's docket for trial.

Adrianna was placed with another Foster Parent for one day after the removal from the home in mid-May and, then, was placed with the aforementioned Amanda Stanley. On August 29, 2011, DSS removed the child from Stanley's home because Stanley had failed to strictly follow the dietary guidelines required to treat Adrianna's PKU.

Ultimately, on September 1, the child was placed with Janie Denise Sanders. There is no dispute that the Sanders home, which consists of Ms. Sanders, her husband, and her three older daughters, is a proper, caring environment for the child. Adrianna remains in the care of this foster family at the present time.

Prior to placement with Ms. Sanders, however, Welch and Mays filed a petition for custody, moving the Court to determine the legal and physical custody of Adrianna. That petition is now before this Court, having been appealed from the District Court, and an evidentiary hearing was conducted on January 29, 2012.

## II. *Conclusions of Law*

In the instant case, custody is being sought by a former foster parent and a former foster care household member. Under Virginia Code §§ 16.1-241(A) and 20-124.1, "persons with a legitimate interest" are permitted to seek custody or control of a child. Courts are to liberally construe that requirement. See *Surles v. Mayer*, 48 Va. App. 146, 628 S.E.2d 563 (2006). See also *Damon v. York*, 54 Va. App. 544, 680 S.E.2d 354 (2009).

Petitioner Welch was the foster parent for Adrianna for substantially the first eighteen months of the child's life. She cared for the child continuously during that period and held "the same place in the emotional life of the foster child, and [fulfilled] the same socializing functions, as a natural family." *Smith v. Organization of Foster Families*, 431 U.S. 816, 844, 97 S. Ct. 2094, 53 L. Ed. 2d 14 (1977). See also *Village of Belle Terre v. Boraas*, 416 U.S. 1, 94 S. Ct. 1536, 39 L. Ed. 2d 797 (1974). Virginia, of course, does not specifically define a foster parent as a "person with a legitimate

interest." Under any liberal construction of that requirement, however, Welch qualifies, and this Court finds that she has standing to pursue this petition.

Petitioner Mays presents a more tenuous argument to be considered a person with a legitimate interest. Mays' name does not appear on the Foster Care Agreement that placed Adrianna in the home on November 18, 2009, and she was not the child's foster parent. Although no evidence was presented on this point at trial, there appears to be no dispute that Mays was an approved foster care household member. The evidence did show that both Mays and Welch performed parental duties and contributed to the maintenance and well-being of the child and the family atmosphere. Therefore, this Court finds that Mays does have a legitimate interest as contemplated by Virginia law.

Respondent went to great lengths at trial to denigrate the relationship between Welch and Mays on the basis that it is a homosexual relationship, specifically arguing that Petitioners "are not morally fit" to be parents. As will be discussed further below, this Court rejects that argument in the strongest possible terms. The fact that Petitioners are in a committed relationship, regardless of the fact that it is not a "traditional" relationship and that they equally participated in the parenting of the child only strengthens Mays' case to be considered a "person with a legitimate interest."

It is well settled that, in cases involving the custody of a child, "the best interests of the child are paramount and form the lodestar for the guidance of the court in determining the dispute." *Bailes v. Sours*, 231 Va. 96, 99, 340 S.E.2d 824 (1986) (quoting *Walker v. Brooks*, 203 Va. 417, 421, 124 S.E.2d 195 (1962)). When considering the best interest of a child for the purposes of determining custody, the Court is required to consider each of the statutory factors codified in Va. Code § 20-124.3. *Rice v. Rice*, 49 Va. App. 192, 638 S.E.2d 702 (2006). In making the determination of custody in the instant case, this Court has considered each and every one of those statutory factors.

More specifically, the Court has given due consideration to the abundance of evidence presented at trial regarding the age and physical and mental condition of the child, giving due consideration to the child's changing developmental needs. *Sargent v. Sargent*, 20 Va. App. 694, 460 S.E.2d 596 (1995). Two clinical psychologists presented testimony regarding Reactive Attachment Disorder, and there is no doubt that the abrupt removal of Adrianna from the care of Petitioners presents a situation that could have lasting developmental consequences.

While the child's removal from Petitioners home was abrupt and likely caused some level of trauma — after all, the child had essentially been with Petitioners for the eighteen months subsequent to birth, an extremely important period developmentally — this Court is also very concerned about the impact upon the child from yet another removal. To require yet

another change in custody "would be a painful disruption" to the child's life. *Hall v. Hall*, 210 Va. 668, 672, 173 S.E.2d 865 (1970). See also *Patrick v. Byerley*, 228 Va. 691, 325 S.E.2d 99 (1985).

Petitioners argue that the child was in their care for eighteen months and that period should outweigh the five months that the child has been in the care of the current foster family. Although the Court recognizes the importance of the first eighteen months of life and the role Petitioners served in the child's development during those first eighteen months, the argument is too simplistic. The Court is required to look at the situation as it exists today and make a determination as to the best interests of the child.

Here, expert testimony, which was undisputed at trial, established that the child has bonded well with her current foster family. Adrianna has established important relationships during her time in the Sanders home. The Court is not persuaded by Petitioners' claim that a return to Petitioners' home would mitigate any potential developmental trauma; to the contrary, the Court finds there is a substantial risk that yet another removal would exacerbate rather than mitigate any developmental damage.

Were the Court to order removal of the child from her current placement, it would be the fourth time in slightly more than two years that the child has been abruptly removed and sent elsewhere. Further, that number does not include the initial change in custody, wherein the child was placed in Respondents' custody almost immediately after birth.

The Court has touched on this briefly above, but it is important to consider the needs of the child, giving due consideration to important relationships of the child. *Surles*, 48 Va. App. 146, 628 S.E.2d 563. Here, the child has bonded with the current foster family. She has developed relationships with older foster siblings, including Ms. Sanders' three year-old daughter. Importantly, there is an entrustment agreement, and Respondents have indicated that they wish to proceed with the adoption process.

It is certainly in the long-term best interests of Adrianna that she be adopted into a loving, caring family. Although it appears that Petitioners were once on track to be allowed to adopt this child, that is no longer the case. Certainly, DSS is not permitted under Va. Code § 63.2-901.1(E) to approve a foster or adoptive home if any individual in that home has a founded complaint of abuse or neglect. Further, one of the statutory factors this Court is required to consider is whether there has been any history of family abuse as defined in Va. Code § 16.1-228. Compelling evidence was presented on this point.

Petitioners acknowledged at trial that this entire case turns on this particular issue, and, without question, this is the fundamental predominating reason underlying the Court's decision. Respondent seemed to argue at trial that the Petitioners' homosexual relationship was the controlling factor in the case. The Court strenuously disagrees with that assessment. There are certain facts that the Petitioners cannot escape. First, there is currently a

founded complaint against Ms. Welch. That complaint was administratively appealed within DSS, but the current status of the case is that there is a founded complaint. No evidence was presented that would lead the Court to believe that the complaint will be overturned at any time.

Second, Petitioners contend that the currently active criminal charges were taken under advisement by the Court and will be dismissed within ninety days of the trial date. However, in order for the Court to have taken these cases under advisement, there has to have been a finding that there was evidence sufficient to establish the defendant's guilt. In making the determination required of the Court today, that finding cannot be ignored.

Third, while both Petitioners are entitled to have their claims examined independently, Ms. Mays cannot escape the burden imposed by the founded complaint and pending criminal charges. Certainly, there have been no complaints against Ms. Mays. However, these petitioners remain in a committed relationship with each other and reside in the same home. Even giving Mays' petition independent consideration, she is asking the Court to place the child in a home where there has been a founded complaint against one of the supervising parents, in addition to two active criminal charges. This Court declines to do that.

Finally, under Va. Code § 20-124.3, the Court is permitted to consider such other factors as the Court deems necessary and proper to the determination of the best interests of the child. Respondent contends that one of the "other factors" the Court should consider is Petitioners' homosexual relationship. Respondent asserts that this relationship should be a bar to custody, arguing that Petitioners "are not morally fit" as parents and that their household is not an appropriate moral climate for the child. Further, Respondent argued that Petitioners "are committing a crime" by engaging in a homosexual relationship. Respondent cited Va. Code § 18.2-345, which criminalizes "lewd and lascivious" cohabitation.

The Court rejects this argument as a ground for making its decision.

Although the Court finds that there is no merit to this argument propounded by Respondent, and has not considered it in making the custody determination here, the Court is compelled to address these points, briefly, because Respondent insisted repeatedly upon making it an issue.

Certainly, "[the] moral climate in which children are to be raised is an important consideration for the court in determining custody." *Brown v. Brown*, 218 Va. 196, 199, 237 S.E.2d 89 (1977). However, a homosexual parent is not, *per se*, an unfit parent. Further, the Court cannot assume that there are adverse effects on a child because of a parent's homosexuality without specific proof. *Doe v. Doe*, 222 Va. 736, 284 S.E.2d 799 (1981).

In the instant case, Respondent did not offer a single shred of compelling evidence to support its contention that Petitioners were providing an inappropriate moral climate for this child. To the contrary, the evidence

before the Court was that Petitioners were, for almost the entire time Adrianna was in their care, outstanding foster parents.

Respondents attempted to present evidence that Petitioners' homosexual relationship exposed the child to ongoing criminal behavior, citing *Bottoms v. Bottoms*, 249 Va. 410, 457 S.E.2d 102 (1995). As noted by Petitioners, Virginia law does in fact proscribe "lewd and lascivious" cohabitation (Va. Code § 18.2-345) and "crimes against nature" (Va. Code § 18.2-361). However, to the extent that those statutes criminalize homosexuality or homosexual activity, they are plainly unconstitutional on their face. *Lawrence v. Texas*, 539 U.S. 558, 123 S. Ct. 2472, 156 L. Ed. 2d 508 (2003).

If the homosexuality of the Petitioners were the only consideration at issue, DSS would lose this case and it would not be a close call. As it is, the Court rejects this argument as a ground for determination of custody.

## III. *Decision*

All things being equal, Petitioners have a compelling case for custody of this child. Were it not for the events of May 12, 2011, we likely would not be here. This Court is required to determine the best interests of the child from all available evidence, however, and the Court cannot ignore those events as a factor in making this determination. There is no question but that Petitioners care deeply for this child, but sentimentality or sympathy for either party cannot subordinate the best interests of the child.

Petitioners are essentially asking the Court to place them in a better position, custody of the child, rather than mere placement by DSS, than they were prior to a founded complaint of abuse and two criminal charges against a member of the proposed foster family. This Court cannot find that it is in the best interests of the child to do that.

Therefore, the Court finds that it is in the best interests of Adrianna Jo Keith to remain in her current custodial arrangement, and the petition for custody filed by Jennifer Mays and Vicky Welch is hereby denied.