COURT OF APPEALS OF VIRGINIA

Present:  Chief Judge Felton, Judges Frank and Powell
Argued by teleconference


MATTHEW J. SHIEMBOB

                                                          OPINION BY
v.      Record No. 0135-09-1          CHIEF JUDGE WALTER S. FELTON, JR.
                                                          NOVEMBER 24, 2009
SUSAN WREN SHIEMBOB


            FROM THE CIRCUIT COURT OF THE CITY OF PORTSMOUTH
                          Dean W. Sword, Jr., Judge

            J. Roger Griffin, Jr. (Christie, Kantor, Griffin, Smith & Shepherd,
            P.C., on brief), for appellant.

            Diane Pomeroy Griffin (Diane Pomeroy Griffin, P.C., on brief), for
            appellee.


        Matthew J. Shiembob ("husband") appeals from a judgment of the Portsmouth Circuit Court

("trial court").  He contends the trial court erred in ruling that the funds he deposited during the

marriage into Susan Wren Shiembob's ("wife") investment account to replace funds he removed

without her permission or knowledge, was a gift between spouses and wife's separate property;

erred in ruling restricted stock shares received by husband in 2008 and 2009 pursuant to the

Restricted Stock Award Agreement with husband's employer were marital property; erred in

vacating a protective order against disclosure by either party of documents acquired during the

divorce; erred in vacating its prior order sealing the court file; and erred in awarding wife $10,000

toward attorney's fees and costs at trial.  Wife also seeks an award of her attorney's fees and costs

on appeal.  For the following reasons, we affirm in part, reverse in part, and remand for further

proceedings consistent with this opinion.

BACKGROUND

On appeal, "[w]e review the evidence in the light most favorable to wife, the party prevailing below and grant all reasonable inferences fairly deducible therefrom." Anderson v. Anderson, 29 Va. App. 673, 678, 514 S.E.2d 369, 372 (1999). The evidence established that the parties married on June 10, 1995 and separated on January 20, 2007. Three children were born of the marriage, ages nine, five, and one at the time the parties separated. The parties agreed that wife would be the children's primary caregiver while husband supported the family financially.

Wife's father and brother were financial advisors employed by Scott and Stringfellow. In 1999, husband joined wife's father and brother at Scott and Stringfellow as a financial advisor. Husband became a licensed financial advisor in February 2000.

In February 2000, husband, unbeknown to wife or her father, named himself manager of wife's personal investment account ("Raymond James account").[1] At that time, wife's account had a value of $61,807.11. In 2001, when wife learned of the change in the management of her account, husband had depleted that fund to $1,495.89 as a result of his unsuccessful stock trading.

In 2004, Towne Bank negotiated a contract with wife's father, brother, and husband to purchase their partnership. As a result of this purchase and pursuant to an employment contract with Towne Bank, they each received $450,000. For tax reasons, wife's brother and husband negotiated with Towne Bank to receive their respective shares of the purchase price in a partial cash payment, with payment of the balance in Towne Bank stock pursuant to the Restricted Stock Award Agreement. Under that agreement, husband received 12,264 shares of restricted stock in Towne Bank. The agreement provided that 2,452 shares would vest to husband on

---

[1] Wife's father started the Raymond James account for wife during her teenage years, prior to her marriage. The account was held at Scott and Stringfellow where wife's father managed and continued to contribute to the account.

January 30, 2005, and for the next 4 years, 2,453 shares would vest on each January 30th until the final vesting date of January 30, 2009. After the first shares vested, husband sold all 2,452 shares for approximately $75,000.

In March 2006, wife discovered that husband held an undisclosed credit card. She also discovered he carried undisclosed charges on an additional credit card. He had a total balance due of approximately $34,000 on the two cards. Thereafter, wife, husband, and wife's brother met to assess the parties' finances and to create a plan to pay down his credit card debt. During that meeting, wife learned that husband had lost approximately $50,000 received from his sale of the 2005 vesting of his Towne Bank stock "in the market." Husband then informed her, for the first time, that he had joined a country club, which had an initiation fee of $5,000, and a $334 monthly membership fee. Husband also told wife that he had $25,000 in a previously undisclosed personal checking account. The record does not reveal the source of the funds in that account.

As a result of that meeting, husband agreed to take a leave of absence from the country club. The parties agreed to use the proceeds of the sale from the 2006 vesting of Towne Bank stock to pay off his credit card debts. Husband also agreed to put

> $25,000 back into [wife's] account as a way to kind of safeguard so he wouldn't feel tempted to trade that money in the stock market or shuffle it around to pay credit card bills that [she] didn't know about. So it was put away for safekeeping in an effort [for husband] to rebuild trust with [wife].

On May 2, 2006, husband deposited a total of $37,000 into wife's Raymond James account. The $37,000 check was drawn on a Towne Bank account in husband's name. Husband testified that $25,000 came out of a BB&T account held in his name and $12,000 from another unspecified account.

- 3 -

Following the parties' separation on January 20, 2007, wife learned that husband had a separate post office box that he had maintained since 2003. She also discovered that he had obtained an unsecured loan from Towne Bank for $81,000 in April 2006.

An ore tenus hearing was held on October 8-9, 2008. The trial court entered its final decree of divorce on December 12, 2008. It "awarded" the Raymond James account to wife as her separate property, finding husband's $37,000 deposit into that account consisted of marital funds and was a "gift." It also ordered husband to pay $10,000 toward wife's attorney's fees and costs incurred at trial. It found all 12,264 shares of restricted stock received as part of husband's employment with Towne Bank to be marital property.

ANALYSIS

On appeal, "[a] decision regarding equitable distribution rests within the sound discretion of the trial court and will not be disturbed unless it is plainly wrong or without evidence to support it." Holden v. Holden, 31 Va. App. 24, 26, 520 S.E.2d 842, 844 (1999). "'Unless it appears from the record that the trial judge has not considered or has misapplied one of the [equitable distribution] statutory mandates, this Court will not reverse on appeal.'" Id. at 27, 520 S.E.2d at 844 (quoting Ellington v. Ellington, 8 Va. App. 48, 56, 378 S.E.2d 626, 630 (1989)).

I. Raymond James Account

Husband contends the trial court erred "in ruling that funds [he] deposited in the Raymond James account as a gift between spouses during the marriage were [wife's] separate property." He further contends that the trial court erred in finding the $37,000 he deposited into that account was a gift because it is "contradictory to the statutory definitions of separate and marital property."

The trial court gave no basis for its determination that husband's deposit, of what it found to be marital funds, into the Raymond James account was a gift. Moreover, the record is silent

- 4 -

as to whether husband retained any access to that account after he deposited the $37,000, or whether he intended to relinquish all title and interest to those funds, or whether the transfer of those funds was unconditional. Husband testified that he deposited the $37,000 into wife's separate pre-marital account "as a way to kind of safeguard so he wouldn't feel tempted to trade that money in the stock market or . . . to pay credit card bills . . . [that] it was put away for safekeeping." The record is unclear as to whether the trial court found the transfer of the $37,000 in marital funds into the Raymond James account transmuted the funds into wife's separate property pursuant to Code § 20-107.3(A)(3)(d), or found it to be marital property which it "awarded" to wife as part of its equitable distribution award.

Accordingly, we remand to the trial court for clarification of whether it found the Raymond James account to be wife's separate property, not subject to equitable distribution, or whether it classified that account as marital property which it distributed to wife. The final decree simply reflects that the trial court "awarded" that account to wife.

## II. Towne Bank Stock

Husband also contends the trial court erred in finding that the 2008 and 2009 shares of Towne Bank stock were marital property. He contends those shares had not yet vested pursuant to his employment agreement at the time the parties separated and, therefore, were his separate property.

"Generally, the character of property at the date of acquisition governs its classification pursuant to Code § 20-107.3." Stratton v. Stratton, 16 Va. App. 878, 881, 433 S.E.2d 920, 922 (1993).

> All property including that portion of pensions, profit-sharing or deferred compensation or retirement plans of whatever nature, acquired by either spouse during the marriage, and before the last separation of the parties, if at such time or thereafter at least one of the parties intends that the separation be permanent, is presumed to

be marital property in the absence of satisfactory evidence that it is separate property.

Code § 20-107.3(A)(2).

The record shows that, as part of his agreement with Towne Bank, husband was to receive $450,000 from that financial institution. Rather than accepting the full amount in cash, he entered into a "Restricted Stock Award Agreement" with the bank. That agreement awarded husband 12,264 shares of restricted stock. It specifically provided that the "[s]hares awarded . . . shall vest in annual increments beginning on January 30, 2005, in accordance with the following schedule (the first vesting date of January 30, 2005 and each subsequent January 30th up to and including January 30, 2009 shall be a Vesting Date . . . )." The agreement also provided that, while husband could not transfer the shares until they "vested," he was entitled to receive dividends and had full voting rights as to those shares. However, the agreement provided that if husband's employment was terminated "for any reason other than retirement, death, or Disability . . . before the Vesting Dates . . . all Shares that are not then vested shall be forfeited."

Because the vesting of the 2008 and 2009 restricted stock shares were conditioned on husband's continued employment, his right to these shares did not vest until *after* the parties' separation on January 20, 2007. Accordingly, the trial court erred in determining those shares were marital property. See Code § 20-107.3(A)(2); Cirrito v. Cirrito, 44 Va. App. 287, 605 S.E.2d 268 (2004) (holding funds received by husband, consistent with non-compete agreement signed before marriage were marital funds because right to receive those funds was contingent on husband's compliance with agreement which husband fulfilled while married).

We conclude that the trial court erred in finding that, pursuant to the terms of the stock agreement, husband acquired all 12,264 shares of Towne Bank stock prior to the separation of the parties on January 20, 2007, and that the shares received in 2008 and 2009 were marital property.

### III. Protective Order

Husband also contends the trial court erred in its final decree in vacating its protective order, entered under Rule 4:9 to facilitate discovery, which prohibited either party from divulging any information or documents provided during the divorce proceedings. Husband presents no legal authority in his brief to support his argument that the trial court erred. The protective order was entered to facilitate the discovery process because husband refused to provide responses to discovery requests.

Rule 5A:20(e) provides, in part, that the opening brief shall include "[t]he principles of law, the argument, and the authorities relating to each question presented." "'Statements unsupported by argument, authority, or citations to the record do not permit appellate consideration.'" Parks v. Parks, 52 Va. App. 663, 664, 666 S.E.2d 547, 548 (2008) (quoting Cirrito, 44 Va. App. at 302 n.7, 605 S.E.2d at 275 n.7). The Supreme Court concluded that "when a party's 'failure to strictly adhere to the requirements of Rule 5A:20(e)' is significant, 'the Court of Appeals may . . . treat a question presented as waived.'" Parks, 52 Va. App. at 664, 666 S.E.2d at 548 (quoting Jay v. Commonwealth, 275 Va. 510, 520, 659 S.E.2d 311, 317 (2008)). "If the parties believed that the circuit court erred, it was their duty to present that error to [the Court of Appeals] with legal authority to support their contention." Fadness v. Fadness, 52 Va. App. 833, 851, 667 S.E.2d 857, 866 (2008). Because husband provides no legal authority in his brief to support his argument, his claim that the trial court erred in vacating its earlier order prohibiting either party from divulging information or documents acquired during the divorce is waived under Rule 5A:20(e).

### IV. Sealed Court Records

Husband also contends the trial court erred in vacating its order sealing the trial court record to protect financial disclosures of the parties made part of the record and the personal and

professional privacy of the parties.  We find no error on the part of the trial court in unsealing the trial record.

Code § 17.1-208 provides, in part, "Except as otherwise provided by law, any records and papers of every circuit court that are maintained by the clerk of the circuit court shall be open to inspection by any person."  Code § 20-124 provides that upon motion of a party in a divorce action, a trial court may order all or part of the record sequestered.  Husband argues that once the trial court sequestered the record pursuant to Code § 20-124, it must remain sealed except to the parties and to those designated by the trial court.  He further contends that the trial court exceeded its powers under Code § 20-124 in vacating its own order but provides no authority for that proposition other than Boone v. City of Suffolk, 79 F. Supp. 2d 603 (E.D. Va. 1999) (involving unsealing settlement agreement under Federal Rules of Civil Procedure), which we conclude is inapplicable here.

Husband argues that once the record is sealed, it can only be unsealed piecemeal pursuant to Code § 20-124.  However, "the desire of the litigants [to seal the record of the trial court proceedings] is not sufficient reason to override the presumption of openness.  Nor do we believe that risks of damage to professional reputation, emotional damage, or financial harm, stated in the abstract, constitute sufficient reasons to seal judicial records."  Shenandoah Publishing House, Inc. v. Fanning, 235 Va. 253, 259, 368 S.E.2d 253, 256 (1988); see also Perreault v. Free Lance-Star, 276 Va. 375, 392, 666 S.E.2d 352, 361 (2008) (holding records in wrongful death case should be unsealed where parties' fears of "emotional damage or financial harm when stated 'in the abstract, [do not] constitute sufficient reasons to seal judicial records'" (alteration in original) (quoting Shenandoah Publishing, 235 Va. at 259, 368 S.E.2d at 256)).[2]

_____

[2] However, sequestering portions of the record containing social security numbers, account numbers, and sensitive information relative to children are common occurrences in divorce cases.

The order sealing the record recites the trial court did so after consideration of husband's motion. However, wife's written motion to vacate the order, made a part of the record, recites that she agreed to have the record sealed because husband refused to respond to discovery requests under Rule 4:9. Husband's written response to that motion recites that, because the record was sealed, he "conducted himself accordingly" during the discovery phase and trial.

Here, the information husband does not want publicly exposed relates to certain decisions made by him during his employment. Husband's undefined concern for his professional reputation does not rebut the presumption of openness of judicial records. See Perreault, 276 Va. at 391-92, 666 S.E.2d at 361; Shenandoah Publishing, 235 Va. at 259, 368 S.E.2d at 256. Other states have treated the presumption of openness attendant to court records similarly. See Burkle v. Burkle, 37 Cal. Rptr. 3d 805, 819 (Cal. Ct. App. 2006) ("Indeed, the issues distinguishing divorce cases from other civil cases–such as psychological evaluations in child custody disputes and the like–are often the subject of statutory exceptions to the general rule of public access, in which the Legislature has already engaged in the necessary balancing of privacy rights and public access rights. Nothing about these exceptions contradicts the conclusion that both historical tradition and the institutional value of open proceedings mandate a presumption of openness in divorce proceedings just as in other civil cases."); In re Berg, 886 A.2d 980 (N.H. 2005) (sealing of children's therapy records from father's view in contentious custody proceeding warranted to protect welfare of children); Douglas v. Douglas, 772 A.2d 316, 318 (N.H. 2001) (holding trial court "properly balanced the parties' competing interests during an *in camera* hearing and ordered the financial affidavits be made public" by ordering certain information, i.e., social security numbers, redacted); Smith v. Smith, 879 A.2d 768, 774 (N.J. Super. Ct. Ch. Div. 2004) (holding "[t]he desire of movants to preserve their reputations, and to prevent the dissemination of what may prove at the end of trial to be unsupported innuendo, is

entirely understandable" but insufficient to overcome the "strong presumption of open judicial proceedings"); Thomas v. Thomas, 991 P.2d 7, 14 (N.M. Ct. App. 1999) (holding husband's motion to seal failed to show that wife's "outrageous, unsubstantiated allegations" against him constituted an "extraordinary case" warranting sealing entire record); In re Marriage of Treseler, 187 P.3d 773, 776 (Wash. Ct. App. 2008) (holding husband failed to show compelling need for sealing record to overcome the presumption of openness because "'[j]ustice in all cases shall be administered openly'" (alteration in original) (quoting Wash. Const. art. I, § 10)), review denied, 203 P.3d 381 (Wash. 2009).

Based on the record on appeal, we conclude the trial court did not abuse its discretion when it vacated its earlier order sealing the entire record.

### V. Attorney's Fees in the Trial Court

Husband contends the trial court erred in ordering him to pay a portion of wife's attorney's fees and costs incurred by her in the trial court. However, the only basis for his argument is contained in the transcript of the December 12, 2008 hearing that was not timely filed.

Rule 5A:8(a) provides that

> [t]he transcript of any proceeding is a part of the record when it is filed in the office of the clerk of the trial court within 60 days after entry of the final judgment. Upon a written motion filed within 60 days after entry of the final judgment, a judge of the Court of Appeals may extend this time for good cause shown.

"If . . . the transcript is indispensable to the determination of the case, then the requirements for making the transcript a part of the record on appeal must be strictly adhered to. This Court has no authority to make exceptions to the filing requirements set out in the Rules." Turner v. Commonwealth, 2 Va. App. 96, 99, 341 S.E.2d 400, 402 (1986).

Here, husband did not request, nor did the Court grant, an extension of time for filing the transcript of the December 12, 2008 hearing. Because the arguments raised by husband are wholly contained within the untimely-filed transcript and are indispensable to the determination of this issue, this question is waived on appeal.

### VI. Attorney's Fees on Appeal

Wife also seeks an award of her attorney's fees and costs incurred on appeal.

> "The rationale for the appellate court being the proper forum to determine the propriety of an award of attorney's fees for efforts expended on appeal is clear. The appellate court has the opportunity to view the record in its entirety and determine whether the appeal is frivolous or whether other reasons exist for requiring additional payment."

Rice v. Rice, 49 Va. App. 192, 204, 638 S.E.2d 702, 708 (2006) (quoting O'Loughlin v. O'Loughlin, 23 Va. App. 690, 695, 479 S.E.2d 98, 100 (1996)). Here, husband substantially prevailed on appeal. We find no reason to award wife attorney's fees and costs on appeal and deny her request.

### CONCLUSION

For the reasons set forth above, we reverse the trial court's equitable distribution award, concluding that it erred in determining that the 2008 and 2009 shares of restricted Towne Bank stock were marital property. We are unable to ascertain from the record the basis on which the trial court found husband's deposit of $37,000 into wife's pre-marriage account was a "gift," and remand for clarification as to whether the trial court found that the transfer of the $37,000 in marital funds into the Raymond James account transmuted the funds into wife's separate property pursuant to Code § 20-107.3(A)(3)(d), or if the trial court classified the account as part of the marital estate which it "awarded" to wife. As to husband's additional grounds of appeal,

we affirm the trial court's judgment for the reasons stated.  We deny wife's request for attorney's

fees and costs incurred on appeal.

<u>Affirmed in part,</u>
<u>reversed in part,</u>
<u>and remanded.</u>