COURT OF APPEALS OF VIRGINIA

Present: Judges Russell, AtLee and Senior Judge Haley

DEBORAH WILSON

MEMORANDUM OPINION*
v.      Record No. 0883-19-2                                    PER CURIAM
                                                               NOVEMBER 26, 2019
HANOVER COUNTY DEPARTMENT
 OF SOCIAL SERVICES

FROM THE CIRCUIT COURT OF HANOVER COUNTY
J. Overton Harris, Judge

(John R. Working; The Railside Law Group, PLLC, on brief), for
appellant.

(Dennis A. Walter, County Attorney; Lisa Ashworth Seward, Senior
Assistant County Attorney; Catherine L. Scott, Guardian *ad litem* for
the minor child, on brief), for appellee.

Deborah Wilson (mother) appeals the circuit court order terminating her parental rights to

her child, K.J. Mother argues that the circuit court erred by finding that the evidence was sufficient

to terminate her parental rights under Code § 16.1-283(C)(2). She also contends that the circuit

court violated her due process rights "by terminating her parental rights without first providing a

fundamentally fair process, where she could meet the department's expectations, and where she

made substantial progress in meeting their [sic] goals." Upon reviewing the record and briefs of

the parties, we conclude that this appeal is without merit. Accordingly, we summarily affirm the

decision of the circuit court. See Rule 5A:27.

_____

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

UNPUBLISHED

BACKGROUND[1]

"On appeal from the termination of parental rights, this Court is required to review the evidence in the light most favorable to the party prevailing in the circuit court." Yafi v. Stafford Dep't of Soc. Servs., 69 Va. App. 539, 550-51 (2018) (quoting Thach v. Arlington Cty. Dep't of Human Servs., 63 Va. App. 157, 168 (2014)).

In March 2018, mother, who was a resident of New York, reportedly was in Virginia to visit relatives and give birth to K.J. Both mother and K.J. tested positive for opiates, cocaine, and cannabinoids.[2]

The Hanover County Department of Social Services (the Department) met with mother at the hospital, and she denied using opiates and cocaine. She admitted to marijuana use. Mother submitted to a drug screen, which was positive for morphine and negative for marijuana, opiates, and cocaine. Mother told the Department that she previously had been diagnosed with anxiety and depression for which she took medication, but she was no longer in treatment. Mother indicated that she was living with her adult daughter and grandchildren in Richmond. The Department visited the home and found it to be "adequately furnished with no noticeable safety concerns." Mother agreed to participate in several services, including a substance abuse evaluation and treatment, mental health treatment, early intervention services for K.J., and ongoing services from the Department.

---

[1] The record in this case was sealed. Nevertheless, the appeal necessitates unsealing relevant portions of the record to resolve the issues appellant has raised. Evidence and factual findings below that are necessary to address the assignments of error are included in this opinion. Consequently, "[t]o the extent that this opinion mentions facts found in the sealed record, we unseal only those specific facts, finding them relevant to the decision in this case. The remainder of the previously sealed record remains sealed." Levick v. MacDougall, 294 Va. 283, 288 n.1 (2017).

[2] K.J. is mother's third child who was born substance-exposed. Mother did not have custody of her other two children.

The Department contacted the New York City Child Protective Services and learned that it had investigated mother ten times over the years for concerns about another child, who was in foster care due to allegations of abuse and neglect. Mother had not participated in any services for the child's return. The Department also received a summary of mother's criminal history, which included thirty-five arrests.

A few days later, the Department received a report that mother had not been compliant with the hospital policies when she visited K.J. and that she had failed the "overnight" test with him. The medical providers did not believe that it was safe for K.J. to be in mother's care.

The Department met with mother and her adult daughter and expressed its concerns with mother about the information from New York, her behaviors in the hospital, and her drug use. The Department discussed the possibility of K.J. being released to the care of mother's adult daughter and mother not having any unsupervised contact with K.J. However, when mother's adult daughter tested positive for marijuana, the Department petitioned for the emergency removal of K.J. The Hanover County Juvenile and Domestic Relations District Court (the JDR court) entered an emergency removal order on April 16, 2018, and a preliminary removal order on April 19, 2018. The JDR court adjudicated K.J. as abused and neglected and entered a dispositional order on June 4, 2018.

The Department required mother to complete a substance abuse evaluation and follow all treatment recommendations, participate in a psychological and parenting evaluation, submit to random drug and alcohol screens, abstain from alcohol and illegal substances, participate in visitations, maintain contact with the Department, maintain safe and stable housing, demonstrate financial stability, and sign any necessary release forms for the Department. The Department conducted a Structured Decision Making (SDM) Family Risk Assessment and SDM

Reunification Risk Review and determined that K.J. was at a "very high" risk for future neglect and "high" risk for future abuse if he were reunited with mother.

Mother did not appear for her initial appointment for the substance abuse evaluation, but she subsequently completed the evaluation. Mother denied using opiates and cocaine and said that she was clean when K.J. was born. Mother did not believe marijuana was a drug and stated that she had no intention to stop using it permanently. She reportedly used "a very large amount of marijuana" every day. Many of her friends and family also used marijuana. Mother told the evaluator that she had been diagnosed with bipolar disorder and had a history of depression, anxiety, and anger issues. She had not been taking her medication and had been experiencing auditory hallucinations. The evaluator recommended intensive substance abuse treatment for mother, as well as parenting classes and anger management classes. Due to mother's mental health issues, the evaluator recommended a psychological/psychiatric evaluation. The evaluator expressed some reservations about the future because mother did not appear "motivated for treatment."

The Department referred mother for a psychological evaluation, which was completed in September 2018. Mother tested in the "extremely low range" for verbal comprehension, which indicated that she would "require additional time to process and generalize verbal information, and [was] likely to become quickly overwhelmed when presented with complex verbal or written information." The psychologist also concluded that mother met the diagnostic criteria for bipolar disorder, generalized anxiety disorder, paranoid personality disorder, and substance use disorder. The psychologist found that mother lacked insight into her parenting needs and was "at risk for parenting struggles based on her psychiatric symptoms, her distorted reality testing, difficulty with empathy and reflection, and deficits in knowledge of parenting skills." The psychologist recommended psychiatric and therapeutic services for mother and, particularly, an intensive

residential substance abuse treatment program. The psychologist also believed that mother could benefit from a life skills coach, mental health skill building, and a parenting coach.

On July 19, 2018, the Department referred mother for services at Richmond Behavioral Health Authority (RBHA), but mother did not start services until April 2019. The Department repeatedly expressed concern about mother's "inability to establish a consistent pattern of sobriety" and her denial of any drug usage since the birth of K.J. Between May 2018 and October 2018, mother tested positive for drugs seven out of thirteen times.

In addition to the referrals for the evaluations and treatment programs, the Department scheduled supervised visitations between mother and K.J. Mother missed several of the initial visitations with K.J. until the Department could arrange transportation for her. When she did visit, mother had acted appropriately while visiting with K.J. Beginning in September 2018, mother started missing visitations with K.J. again, despite having transportation available to her.

The Department reported that after his birth, K.J. had difficulty feeding and was under the care of a gastroenterologist. K.J.'s foster care parents regularly took him to the doctor and met his medical, emotional, and developmental needs. K.J. has lived with the same foster care family since his discharge from the hospital and had bonded with them. His foster care parents expressed a desire to adopt him.

On October 3, 2018, the JDR court did not approve the foster care plan's goal of return home, and on October 31, 2018, the JDR court did not approve the foster care plan's goal of relative placement. The Department investigated several relatives as possible placements for K.J., to no avail. The Department ultimately changed the foster care plan's goal to adoption, which the JDR court approved on November 14, 2018. The Department subsequently petitioned

for the termination of mother's parental rights.  On January 30, 2019, the JDR court terminated mother's parental rights to K.J.  Mother appealed the ruling to the circuit court.[3]

On April 29, 2019, the parties appeared before the circuit court.[4]  The Department continued to offer mother visitation after the JDR court terminated her parental rights, but she missed five out of the six visitations.  At the time of the circuit court hearing, mother still had not received any psychiatric treatment or medication.  The circuit court considered the conclusions of mother's psychological evaluation, specifically that when she was not on her medication, she experienced "increasing instability" and auditory hallucinations.  The circuit court found that mother had "failed to remedy her living situation and have a drug-free home environment" and "failed to complete a criminal background check despite repeated attempts by the Department." The circuit court considered that the substance abuse evaluation revealed that mother had a "Very High Likelihood" of a substance abuse disorder.  The circuit court also considered mother's "extensive criminal history involving assaultive behavior" and that she had another child removed from her care in New York.  Based on the totality of the record, the circuit court terminated mother's parental rights under Code § 16.1-283(C)(2).  This appeal followed.

ANALYSIS

*Termination of parental rights*

Mother argues that the circuit court erred by terminating her parental rights under Code § 16.1-283(C)(2), which states that a court may terminate parental rights if:

> The parent or parents, without good cause, have been unwilling or unable within a reasonable period of time not to exceed 12 months from the date the child was placed in foster care to remedy substantially the conditions which led to or required continuation of the child's foster care placement, notwithstanding the

---

[3] Mother appealed only the JDR court's ruling that terminated her parental rights, not the ruling that approved the foster care plan's goal of adoption.

[4] Mother did not timely file a transcript of the circuit court hearing.  See Rule 5A:8(a).

reasonable and appropriate efforts of social, medical, mental health or other rehabilitative agencies to such end.

"On review, '[a] trial court is presumed to have thoroughly weighed all the evidence, considered the statutory requirements, and made its determination based on the child's best interests.'" Castillo v. Loudoun Cty. Dep't of Family Servs., 68 Va. App. 547, 558 (2018) (quoting Logan v. Fairfax Cty. Dep't of Human Dev., 13 Va. App. 123, 128 (1991)). "Where, as here, the court hears the evidence *ore tenus*, its finding is entitled to great weight and will not be disturbed on appeal unless plainly wrong or without evidence to support it." Fauquier Cty. Dep't of Soc. Servs. v. Ridgeway, 59 Va. App. 185, 190 (2011) (quoting Martin v. Pittsylvania Cty. Dep't of Soc. Servs., 3 Va. App. 15, 20 (1986)).

Mother asserts that she made "substantial progress in getting clean" while K.J. was in foster care. She contends that K.J. "was not going to ingest drugs because [he] no longer [was] in utero and was never breast fed by [mother]." She further notes that the record does not indicate that she appeared under the influence at any of her visits with K.J. Mother argues that she "did pursue" in-patient treatment, but acknowledges that she never obtained in-patient treatment. Mother asserts that she maintained contact and showed concern for K.J., so termination of her parental rights was not in his best interests.

"[S]ubsection C termination decisions hinge not so much on the magnitude of the problem that created the original danger to the child, but on the demonstrated failure of the parent to make reasonable changes." Yafi, 69 Va. App. at 552 (quoting Toms v. Hanover Dep't of Soc. Servs., 46 Va. App. 257, 271 (2005)). Mother's mental health and substance abuse issues remained unresolved. The circuit court found that mother had failed to obtain psychiatric treatment and medication, maintain a drug-free home, and complete a criminal background check. Mother reported having auditory hallucinations because she was not taking her psychiatric medicine. She also told the substance abuse evaluator that she had no intention of

stopping her use of marijuana permanently. The substance abuse evaluation revealed that mother had a "Very High Likelihood" of a substance abuse disorder. Despite the Department referring mother for treatment since July 2018, mother did not complete the intake process with RBHA for substance abuse treatment until April 17, 2019, which was twelve days before the circuit court hearing. Contrary to her assertions, mother did not demonstrate that she had made substantial progress in remedying the conditions that led to K.J. being placed in, and remaining in, foster care.

The circuit court did not err in finding that the termination of mother's parental rights was in the best interests of K.J. The psychologist conducting the psychological and parenting evaluation stated that "[t]reatment of mental health symptoms and substance abuse is the primary need for [mother] to be capable of caring for her child." Mother did not obtain psychiatric treatment and medication, and she did not start seeking substance abuse treatment until April 2019, a year after K.J. had been in foster care. Mother did not demonstrate that she was in a position to care for K.J. "It is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming his [or her] responsibilities." Tackett v. Arlington Cty. Dep't of Human Servs., 62 Va. App. 296, 322 (2013) (quoting Kaywood v. Halifax Cty. Dep't of Soc. Servs., 10 Va. App. 535, 540 (1990)).

Mother also argues that the Department provided inadequate services to her. The circuit court, however, found that "the Department made reasonable and appropriate efforts for Mother throughout the foster care case." "'Reasonable and appropriate' efforts can only be judged with reference to the circumstances of a particular case. Thus, a court must determine what constitutes reasonable and appropriate efforts given the facts before the court." Harrison v. Tazewell Cty. Dep't of Soc. Servs., 42 Va. App. 149, 163 (2004) (quoting Ferguson v. Stafford Cty. Dep't of Soc. Servs., 14 Va. App. 333, 338 (1992)). The Department "is not required to

force its services upon an unwilling or disinterested parent." Tackett, 62 Va. App. at 323 (quoting Harris v. Lynchburg Div. of Soc. Servs., 223 Va. 235, 243 (1982)); see also Logan, 13 Va. App. at 130. Here, the Department provided numerous services to mother, but she did not follow through with the recommendations. She never sought psychiatric treatment and did not start substance abuse treatment until April 2019. Mother repeatedly denied drug use, despite testing positive for illegal drugs. She also indicated that she did not believe that marijuana was a drug. Credible evidence supports the circuit court's finding that the Department had made reasonable and appropriate efforts.

Based on the record before us, the circuit court did not err in terminating mother's parental rights under Code § 16.1-283(C)(2).

*Due process*

Mother argues that the circuit court violated her due process rights "without first providing a fundamentally fair process, where she could meet the [D]epartment's expectations, and where she made substantial progress in meeting their goals."

The record does not include a timely filed transcript from the circuit court hearing. See Rule 5A:8(a) ("[t]he transcript of any proceeding is a part of the record when it is filed in the office of the clerk of the trial court within 60 days after entry of the final judgment").

We find that the transcript from the circuit court hearing is indispensable to a determination of the second assignment of error raised on appeal. "If . . . the transcript is indispensable to the determination of the case, then the requirements for making the transcript a part of the record on appeal must be strictly adhered to. This Court has no authority to make exceptions to the filing requirements set out in the Rules." Shiembob v. Shiembob, 55 Va. App. 234, 246 (2009) (quoting Turner v. Commonwealth, 2 Va. App. 96, 99 (1986)); see also Bay v. Commonwealth, 60 Va. App. 520, 528-29 (2012). "The burden is upon the appellant to provide

us with a record which substantiates the claim of error.  In the absence [of a sufficient record], we will not consider the point." Robinson v. Robinson, 50 Va. App. 189, 197 (2007) (quoting Jenkins v. Winchester Dep't of Soc. Servs., 12 Va. App. 1178, 1185 (1991)); see also Rule 5A:8(b)(4)(ii).  Without a transcript, we are unable to review the parties' evidence and arguments; therefore, a transcript is indispensable to resolving mother's second assignment of error.

## CONCLUSION

For the foregoing reasons, the circuit court's ruling is summarily affirmed.  Rule 5A:27.

Affirmed.