COURT OF APPEALS OF VIRGINIA

Present:   Judges Chaney, White and Senior Judge Annunziata
Argued at Fairfax, Virginia


HISHAM EL-HAMAYEL

                                                    MEMORANDUM OPINION* BY
v.        Record No. 1074-23-4              JUDGE KIMBERLEY SLAYTON WHITE
                                                         MAY 14, 2024
MICHELLE EL-HAMAYEL, N/K/A
 MICHELLE ABUSADA


FROM THE CIRCUIT COURT OF PRINCE WILLIAM COUNTY
Robert P. Coleman, Judge

Kate E. Beurmann-O'Neill (Family Law Group, P.C., on brief), for
appellant.[1]

No brief or argument for appellee.


Hisham El-Hamayel (father) appeals an order of the circuit court amending his child support

obligation to Michelle El-Hamayel (mother) and awarding her attorney fees.  On appeal, he

contends that the circuit court erred in determining his income, imputing additional income to him,

calculating child support based on his actual income, failing to explain why it deviated from the

presumptive child support guidelines, and awarding mother attorney fees.  Finding no error, we

affirm the judgment of the circuit court.

---

* This opinion is not designated for publication.  *See* Code § 17.1-413(A).

[1] Rule 5A:19(b)(3) permits an appellant to file a reply brief "within 14 days after the
filing of the brief of appellee."  We do not consider appellant's reply brief because the rule does
not permit an appellant to file a reply brief absent the filing of the brief of appellee.

BACKGROUND[2]

"Under familiar principles, we view [the] evidence and all reasonable inferences in the light most favorable to the prevailing party below." *Ridenour v. Ridenour*, 72 Va. App. 446, 450 (2020) (alteration in original) (quoting *Pommerenke v. Pommerenke*, 7 Va. App. 241, 244 (1988)). Here, mother was the prevailing party over the father.

The parties are the biological parents of three children. On June 11, 2007, the circuit court entered a final decree of divorce ordering father to pay mother $722 per month for child support. On September 11, 2020, father moved to amend child support in the Prince William County Juvenile and Domestic Relations District Court (the JDR court). Father specifically requested that the JDR court reduce his child support obligation to $500 per month and order that the parties share the transportation costs for visitation because their oldest child had become emancipated and "travel expenses" were "expensive."

However, after considering the situations of both parties at the hearing, the JDR court instead entered an order that increased father's child support obligation from September 16, 2020, until March 1, 2021, to $831 per month. The JDR court's order then reduced father's child support obligation, beginning on April 1, 2021, to $523 per month due to the emancipation of their middle child. The JDR court then determined that father owed mother $8,053.50 in child support arrearages.

Father appealed the JDR court's rulings to the circuit court, which held a hearing on father's motion to amend on February 15, 2023. The record includes a transcript of the circuit court's ruling from that hearing but, for the reasons set forth below, does not include a transcript of the full

---

[2] "Although parts of the record are sealed, this appeal requires unsealing certain portions to resolve the issues raised by the parties. To the extent that certain facts mentioned in this opinion are found in the sealed portions of the record, we unseal only those portions." *Mintbrook Devs., LLC v. Groundscapes, LLC*, 76 Va. App. 279, 283 n.1 (2022).

hearing. According to the transcript of the circuit court's ruling, the circuit court found there had been a material change in circumstances warranting an amendment of father's child support obligation due to the "increased income levels of both the parties, the age of the children and the passage of time."[3]

As to father's income, the circuit court noted that it reviewed father's tax returns as well as his bank account and credit card statements. This review led the circuit court to conclude that his income for child support purposes was considerably higher than what was reported as income on his tax returns. After reviewing the exhibits, the circuit court determined that father's "tax documents simply do not jive with the income and expenses of [father] as well as deposits and withdrawals made from both his personal and business accounts." Rather, the circuit court found that there was a "gross commingling of accounts, both business and personal" and a "gross disparity between the income [father] deposited into accounts and monies reported as received on tax returns." The circuit court also noted that "[i]t's fairly easy to manipulate a tax return if the data provided to complete said documents are also manipulated or falsified or simply left out." The circuit court further found that father intended "to hide assets and deflect what [his] proper income level" was for child support purposes.

In support thereof, the circuit court found that father deposited $128,154 in his personal accounts in 2020, which was "substantially less" than "his reported taxable receipts . . . on both his business and personal returns." The circuit court added that "[t]he same can be said for taxable years 2021 and 2022 where gross deposits to [father's] personal accounts totaled $108,305.40 and $188,869 respectively." Despite the amounts of these deposits, father's adjusted gross income, as reflected on his personal federal tax returns, was $6,380 in 2020, $13,242 in 2021, and $13,711 in

_____

[3] The circuit court also made several findings with respect to mother's income, which father does not contest on appeal.

2022. As a result, the circuit court stated that it had "absolutely no confidence in the accuracy and reliability of" father's tax returns and "to attribute $13,711 in income to [father] would be a grave misjustice."

Based on its findings regarding the accuracy of father's tax returns, the circuit court explained that it was "compelled to rely on the bank statements of [f]ather's personal and business accounts to determine his income." The circuit court added that it would, "[o]ut of an abundance of caution, . . . account for one third of [f]ather's personal income as being reasonable business expenses." When computing the father's income, the circuit court then ruled that it would "impute" income to father, such that his 2020 monthly income was $7,500, his 2021 monthly income was $6,333, and his 2022 monthly income was $11,000.

Applying the presumptive child support guidelines, the circuit court found that father's monthly child support obligation between September 16, 2020, and December 31, 2020, was $1,261. Accounting for the change in the parties' annual incomes, the circuit court found that father's monthly child support obligation between January 1, 2021, and March 26, 2021, was $1,114. Further accounting for the emancipation of the parties' middle child, the circuit court found that father's monthly child support obligation between April 1, 2021, and December 31, 2021, was $1,094. Finally, accounting for another change in the parties' annual incomes, the circuit court found that father's monthly child support obligation between January 1, 2022, and February 28, 2023, was $1,541 per month.

After computing father's new child support obligations, the circuit court calculated the total arrearages as $30,025.50 and ordered father to pay an additional $500 per month until the arrearages were paid in full. The circuit court also awarded mother $10,000 in attorney fees based on her affidavit and the "equities of the case," noting that "father ha[d] been deceptive and

less than forthcoming regarding his income." The circuit court entered a final order consistent with its rulings on March 17, 2023. Father appeals.

ANALYSIS

"The determination of child support is a matter of discretion for the circuit court, and therefore we will not disturb its judgment on appeal unless plainly wrong or unsupported by the evidence." *Da'Mes v. Da'Mes*, 74 Va. App. 138, 144 (2022) (quoting *Niblett v. Niblett*, 65 Va. App. 616, 624 (2015)). "Child support decisions . . . 'typically involve fact-specific decisions best left in the "sound discretion" of the trial court.'" *Id.* (alteration in original) (quoting *Niblett*, 65 Va. App. at 624).

I. The Circuit Court Did Not Find That Father Was Underemployed and Impute Additional Income to Him

There is "a rebuttable presumption . . . that the amount of the award that would result from the application of the [child support] guidelines . . . is the correct amount of child support to be awarded." Code § 20-108.1(B). "[T]o rebut the presumption, the court shall make written findings . . . that the application of such guidelines would be unjust or inappropriate." *Id.* In such cases, the circuit court's written findings "shall state the amount of support that would have been required under the guidelines, shall give a justification of why the order varies from the guidelines, and shall be determined by relevant evidence pertaining to" certain statutory factors "affecting the obligation." *Id.* Relevant to this appeal, the statutory factors include "[i]mputed income to a party who is voluntarily unemployed or voluntarily underemployed." Code § 20-108.1(B)(3).

Father contends that the circuit court erred by imputing additional income to him for the purpose of calculating child support. Moreover, as a threshold matter, father argues that the circuit court erred by failing to calculate the amount of presumptive child support based on his income as evidenced by his testimony and tax returns, and further erred by failing to explain in writing its justifications for deviating from the child support guidelines under Code § 20-108.1(B).

- 5 -

Although father emphasizes that the circuit court stated in its ruling that it would "impute" income to him for 2020, 2021, and 2022, the context of the circuit court's ruling demonstrates that it did not impute additional income to father because he was underemployed. Rather, the circuit court simply made a factual determination regarding father's actual income based on the evidence presented by the parties. Indeed, after noting that it had "absolutely no confidence in the accuracy and reliability of" father's tax returns, the circuit court explained that it was "compelled to rely on the bank statements of [f]ather's personal and business accounts *to determine his income*." In addition to having no confidence in the accuracy of father's tax returns, the circuit court explained how easy it is to manipulate tax returns and that the documents don't "jive" with the income and expenses of the father. Furthermore, the circuit court's ruling does not reflect that it found father to be voluntarily underemployed as he suggests, but rather that father had "gross[ly] commingl[ed] [his] accounts . . . to hide assets and deflect what [his] proper income level is for purposes of child support computations." Moreover, the circuit court's final order states that it calculated father's child support obligation based on "presumptive guideline child support."

This Court presumes "that the trial court correctly applied the law." *Mills v. Mills*, 77 Va. App. 543, 561 (2023). Because the limited record before this Court shows that the circuit court did not impute additional income to father because he was underemployed, but instead was simply making a factual determination of income, it was not required to include written findings justifying an imputation under Code § 20-108.1(B). *See Ridenour*, 72 Va. App. at 452 ("[U]nless it appears from the record that the circuit court judge has abused his discretion by not considering or by misapplying one of the statutory mandates, the child support award will not be reversed on appeal." (quoting *Niblett*, 65 Va. App. at 624)); *see also Floyd v. Floyd*, 17 Va. App. 222, 229 (1993) (holding that the circuit court "ma[d]e a finding of fact as to the amount of appellant's gross income" and did not impute additional income). Moreover, given that the circuit court did not

impute additional income to father for the reason set forth in the statute, we do not address his argument that the evidence did not support the circuit court's imputation of additional income to him.

## II. Father Waived His Remaining Assignments of Error Under Rule 5A:8

"On appeal, we presume the judgment of the trial court is correct." *Bay v. Commonwealth*, 60 Va. App. 520, 528 (2012). "The burden is upon the appellant to provide [this Court] with a record which substantiates the claim of error. In the absence [of a sufficient record], we will not consider the point." *Dixon v. Dixon*, 71 Va. App. 709, 716 (2020) (second alteration in original) (quoting *Robinson v. Robinson*, 50 Va. App. 189, 197 (2007)). "The transcript of any proceeding is a part of the record when it is filed in the office of the clerk of the trial court no later than 60 days after entry of the final judgment." Rule 5A:8(a). "When the appellant fails to ensure that the record contains transcripts or a written statement of facts necessary to permit resolution of appellate issues, any assignments of error affected by such omission will not be considered." Rule 5A:8(b)(4)(ii). Indeed, if "the transcript [or statement of facts] is indispensable to the determination of the case, then the requirements for making the transcript [or statement of facts] a part of the record on appeal must be strictly adhered to." *Bay*, 60 Va. App. at 528 (alterations in original) (quoting *Turner v. Commonwealth*, 2 Va. App. 96, 99 (1986)).

In this case, the circuit court entered its final order on March 17, 2023. Although the transcript of the circuit court's ruling is a part of the record, father did not file a transcript of the full hearing on his motion to amend until May 31, 2023. As the transcript of the full hearing was filed 75 days after the circuit court's final order, it is not a part of the record. Rule 5A:8(a). While the transcript is not part of the official record, the transcript of the trial court's ruling was filed in time and can be used separately of the testimonial transcript. Given our holding that the

transcript is not a part of the record under Rule 5A:8, we must consider whether it is indispensable to resolving father's remaining assignments of error. *See Bay*, 60 Va. App. at 528-29; *Anderson v. Commonwealth*, 13 Va. App. 506, 508-09 (1992). We conclude that it is.

A. *A transcript is indispensable to resolving father's claims regarding the amount of his actual income*

Father contends that the circuit court abused its discretion by arbitrarily calculating his actual income without the support of credible evidence. Specifically, he challenges the circuit court's determination that one-third of the total deposits into his personal and business accounts were reasonable business expenses. In support of his position, he argues that there was "[n]o evidence . . . which contemplated a certain percentage or fraction of income as business expenses." Instead, he suggests that the circuit court used mother's "interpretations of [his] bank statements . . . to account for deposits received into [his] accounts." Father maintains that the evidence showed that his reasonable business expenses were more than one-third of the total deposits into his accounts and that the circuit court also failed to exclude certain deposits from the determination of his actual income.

In essence, father contends that the circuit court's findings regarding the amounts of his actual income and reasonable business expenses were contrary to the evidence, and he relies on his testimony to support his arguments. Without a transcript of the full hearing, we cannot determine what evidence the parties presented at the hearing or whether the circuit court's findings were contrary to the evidence as father claims on appeal. Father even specifically quotes this Court in saying that the trial court must consider all evidence entered. *Fekete v. Fekete*, No. 1012-20-4, slip op. at 6, 2021 Va. App. LEXIS 61, at 8-9 (Apr. 13, 2021). However, without the transcript, we cannot consider what evidence was before the trial court. As a result, we conclude that a transcript of the hearing, or a written statement of facts in lieu thereof, is indispensable to resolving father's assignments of error challenging the circuit court's calculation of his actual income. *See Bay*, 60

Va. App. at 528-29; *Shiembob v. Shiembob*, 55 Va. App. 234, 246 (2009); *Anderson*, 13 Va. App. at 508-09; *Turner*, 2 Va. App. at 99-100. Accordingly, those assignments of error are waived. Rule 5A:8(b)(4)(ii).

B. *A transcript is indispensable to resolving father's claims regarding the award of attorney fees*

In his final assignment of error, father asserts that the circuit court erred by awarding mother attorney fees. A circuit court's decision to award attorney fees is reviewed "under the deferential abuse of discretion standard." *Sobol v. Sobol*, 74 Va. App. 252, 288 (2022). Father asserts that the circuit court abused its discretion because it did not allow him to argue in opposition to mother's request for attorney fees at the conclusion of the hearing. He further contends that the circuit court abused its discretion because it "used the [attorney] fee award punitively."

Father correctly argues that attorney fee awards made for punitive reasons can be reversed. *Alexander v. Flowers*, 51 Va. App. 404, 416 (2008). He also puts forth the argument that awards of attorney fees are typically based on reasonableness and parties ordinarily bear their own fees under this standard. However, without a transcript of the full hearing, we cannot rule on these fact-intensive arguments. Without this transcript, we cannot determine whether the circuit court designed its award of attorney fees to punish father, precluded him from arguing, or otherwise abused its discretion as father claims on appeal. Indeed, notwithstanding father's arguments to the contrary, the circuit court explained that it awarded mother attorney fees based on her affidavit, the "equities of the case," and because "father ha[d] been deceptive and less than forthcoming regarding his income." This explanation by the circuit court additionally falls within the father's argument of "reasonableness" as well. As a result, we conclude that a transcript of the hearing, or a written statement of facts in lieu thereof, is indispensable to resolving father's assignment of error challenging the circuit court's award of attorney fees. *See Bay*, 60 Va. App. at 528-29; *Shiembob*, 55 Va. App. at 246; *Anderson*, 13 Va. App. at 508-09; *Turner*, 2 Va. App.

at 99-100.  Consequently, father's remaining assignment of error is waived, and we affirm the circuit court's judgment.  Rule 5A:8(b)(4)(ii).

## CONCLUSION

For the foregoing reasons, the circuit court's judgment is affirmed.

*Affirmed.*